# UNITED STATES DISTRICT COURT

for the
Eastern District of Wisconsin

In the Matter of the Search of:

One white Samsung touchscreen cell phone, Serial #
354335/07/551193/3, Device A. Device A is currently located at
the ATF Milwaukee Field Office located at 1000 N. Water Street,
Suite 1400, Milwaukee, WI, 53202. Device A is currently listed
under ATF case number 778040-16-0047, item number 000007

)
)
)
)
)
)
)

Case No. _17-M-107_

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

See Attachment A

located in the Eastern District of Wisconsin, there is now concealed:

See Attachment B

The basis for the search under Fed. R. Crim P. 41(c) is:

- ■ evidence of a crime;
- ■ contraband, fruits of crime, or other items illegally possessed;
- ■ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of: Title 18, United States Code, Section 922(g)(3), Title 18, United States Code, Section 922(d)(1); and (3), Title 18 United States Code, Section 922(a)(1).

The application is based on these facts: See attached affidavit.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days:_____) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

Special Agent Richard Connors, ATF
Printed Name and Title

Sworn to before me and signed in my presence:

Date: June 29 2017

_____
Judge's signature

City and State: Milwaukee, Wisconsin

Honorable David E. Jones , U.S. Magistrate Judge
Printed Name and Title

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, **Richard Connors**, being first duly sworn, hereby depose and state as follows:

### AGENT BACKGROUND AND INFORMATION

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—electronic devices—which are currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.      I am employed as a Special Agent with the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) assigned to the Milwaukee Field Office since October of 2015. I have been employed as a full time law enforcement officer for 24 months. I have received training at the Federal Law Enforcement Training Center in Glynco, GA. I attended the Criminal Investigator Training Program, as well as ATF's Special Agent Training Program. I have received training in the investigation of unlawful possession of firearms, the unlawful transfer of firearms, and the unlawful dealing in firearms without a dealers' license. Prior to becoming a Special Agent with the ATF, I received two (2) bachelor's degrees from Northern Illinois University in the fields of Sociology and International Relations. I have received a Master's degree from Northern Illinois University in the field of American Government.

3.      I have received training in the investigation of firearms trafficking, and I work alongside several senior ATF agents who have worked extensive firearms trafficking investigations in the past. Based on my training, experience, and participation in firearms trafficking investigations, I know and/or have observed the following:

1

a. I have utilized informants to investigate firearms trafficking. Through informant interviews and debriefings of individuals involved in firearms trafficking, I have learned about the manner in which individuals and organizations distribute firearms in Wisconsin;

b. I have also relied on informants to obtain firearms from individuals on the streets (as opposed to licensed gun dealers), known as a controlled purchase;

c. I have experience conducting street surveillance of individuals engaged in firearms trafficking. I have participated in the execution of numerous search warrants where firearms, ammunition, magazines, and firearms cases have been seized;

d. I am familiar with the language utilized over the telephone to discuss firearms trafficking, and know that the language is often limited, guarded, and coded;

e. I know that firearms traffickers often use electronic equipment, wireless and land-line telephones, and pagers to conduct firearms trafficking operations;

f. I know that drug traffickers commonly have in their possession, and at their residences and other locations where they exercise dominion and control, firearms, ammunition, and records or receipts pertaining to such;

g. I know that firearms traffickers often put their telephones in nominee names to distance themselves from telephones that are utilized to facilitate firearms trafficking;

h. I know that firearms traffickers often use proceeds to purchase assets such as vehicles, property, jewelry, and narcotics. I also know that firearms traffickers often use nominees to purchase and/or title these assets to avoid scrutiny from law enforcement officials; and

i. I know that firearms traffickers often use online firearms brokerage websites, such as "Armslist," to obtain firearms. I know that individuals who utilize "Armslist," will contact other users of the site regarding the sale of firearms via electronic mail (hereinafter referred to as EMAIL) and exchange phone numbers. Individuals then discuss price and meet up locations to exchange money for the firearms by phone. Individuals are not required to complete background checks through "Armslist," and individuals often do not check to see if the person to whom they are transferring the firearm is a convicted felon.

4.     I have participated in several firearms trafficking investigations that involved the

seizure of computers, cellular phones, cameras, and other digital storage devices, and the

2

subsequent analysis of electronic data stored within these computers, cellular phones, cameras, and other digital storage devices. In many occasions, this electronic data has provided evidence of the crimes being investigated and corroborated information already known or suspected by law enforcement.

5.     This affidavit is based upon my personal knowledge and upon information reported to me by other federal and local law enforcement officers during the course of their official duties, all of whom I believe to be truthful and reliable.

6.     Because this affidavit is submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only facts that I believe are sufficient to establish probable cause.

## I.     IDENTIFICATION OF THE DEVICES TO BE EXAMINED

7.     I am submitting this affidavit in support of a search warrant for a white Samsung touchscreen cell phone, Serial # 354335/07/551193/3, hereinafter referred to as "Device A." The Device was seized by Milwaukee Police Department Officers during a traffic stop of Antwuan D. PUGH (DOB XX/XX/1993). The Device is currently located at the ATF Milwaukee Field Office located at 1000 N. Water Street, Suite 1400, Milwaukee, WI, 53202. Device A is currently listed under ATF case number 778040-16-0047, item number 000007.

8.     The applied-for warrant would authorize the forensic examination of Device A for the purpose of identifying electronically stored data more particularly described in Attachment B.

## II.     PROBABLE CAUSE

### Vehicle Stop of Antwuan PUGH and Search Warrant at the PUGH Residence

3

9.  On December 1, 2015, MPD officers conducted a traffic stop of a 2000 black Lincoln town car, bearing state of Wisconsin license plate 922-XXN. Antwuan PUGH was driving the aforementioned vehicle, which was registered to his mother. During a search of the vehicle, MPD recovered 0.7 grams of green leafy substance that field tested positive for THC. Also recovered from Antwuan PUGH's person was a White Samsung touchscreen cell phone, model number SM-G360T1. Shortly after the traffic stop, MPD executed a search warrant at 8142 N. Granville Road, Milwaukee, WI, 53224.

10. On December 1, 2015, upon his arrest, Antwuan PUGH gave a recorded statement after being read his Miranda rights. Antwaun PUGH stated he always smokes marijuana when he feels in a "chill" mood. Antwuan PUGH stated he was arrested after officers located a bag of marijuana in his vehicle. Antwuan PUGH further stated that his brother, Kenyon PUGH, has access to his bedroom at the residence on N. Granville Road and would utilize it to change clothing and occasionally leave personal items.

11. Law enforcement believes Antwuan PUGH and his older brother, Kenyon PUGH (DOB XX/XX/1986) resided at 8142 N. Granville Road, Milwaukee, WI on December 1, 2015. because agents conducted surveillance at the residence and observed Antwuan PUGH exiting in and out of the residence on several occasions, and entering and exiting a 2000 black Lincoln town car, bearing state of Wisconsin license plate 922-XXN.

12. In the bedroom believed to be shared by Antwuan and Kenyon PUGH, law enforcement recovered the following from: (1) paper identifiers for Kenyon PUGH, along with an envelope marked "Tweezy," a known nickname for Antwuan PUGH; (2) 1.9 grams of green leafy plant like substance which field tested positive for THC; (3) two firearms: an Armscor of

4

the Philippines handgun, model M1911-A1-FS, .45 caliber, bearing serial number RIA1686424; and a Glock handgun, model 21, .45 caliber, bearing serial number TNY752. Law enforcement located several assorted brands and calibers of ammunition and several different magazines for firearms throughout the house. Additionally, law enforcement located the following empty gun boxes in the residence: Glock hangun boxes, model 23, .40 caliber, bearing serial numbers MHZ778, MHT876, PVL502; Glock handgun box, model 21, .45 caliber, bearing serial number TNY752; Glock handgun box, model 22c, .40 caliber, bearing serial number GHU315; one black plastic Intratec, 9mm, firearms case; one black plastic firearms case for a Armscor of the Philippines handgun, model M1911-A1-FS, .45 caliber, bearing serial number RIA1686424; one plastic black Plano firearms case; andone black cardboard Bersa handgun box for a model Thunder 45, .45 caliber, bearing serial number SG2977.

13. Antwuan PUGH has never been convicted of a felony offense.

**The Pugh Brothers' Involvement with Firearms**

14. On December 6, 2014, Christopher Agena sold a Glock handgun, model 33, .45 caliber, bearing serial number XEH452, to Antwuan PUGH FOR $500. Mr. Agena located the firearm bill of sale and provided a copy to affiant. On the bill of sale form underneath the "buyer" section, Antwuan PUGH filled in his contact information with an address of 8142 N. Granville Road. Mr. Agena indicated that he was contacted via "Armslist" for the purchase of the firearm. Mr. Agena stated that after contacting the individual via "Armslist," he exchanged phone numbers with the potential buyer and the two then began exchanging phone calls and text messages. The number that Mr. Agena utilized was 414-216-7475. Mr. Agena stated that

5

Antwuan PUGH utilized the telephone number 414-233-9677 for the aforementuioned firearms transaction.

15.     Affiant performed a law enforcement query of the telephone number 414-233-9677, the number came back as an active number for Kenyon PUGH. Kenyon PUGH provided that particular number to law enforcement as his contact number when he was cited for excessive noise under Milwaukee County Municipal citation number 48923711239. Additionally, Kenyon PUGH provided the contact number of 414-233-9677 to the Wisconsin Department of Corrections (DOC) on two separate occasions in 2015 as his personal contact number. Kenyon PUGH is prohibited from possessing firearms because he is a convicted felon under Wisconsin Court Case 2011CF002789 for aggravated battery with intent to cause bodily harm, a class H felony, Wisconsin Court Case 2008CF000265 for receiving stolen property greater than $10,000, a class G felony, and Wisconsin Court Case 2005CF006515 for disorderly conduct while armed, a class B misdemeanor in Wisconsin.

16.     Affiant was able to obtain cell phone toll records for the telephone number 414-233-9677 during the time of the aforementioned firearms transaction. Based on the obtained cell phone toll records for the number 414-233-9677, affiant was able to view several calls and texts that were made between 414-233-9677 (believed to be Kenyon PUGH) and 414-216-7475 (Christopher Agena) on December 6, 2014. Shortly after 414-233-9677 (Kenyon PUGH) contacted 414-216-7475 (Christopher Agena), 414-233-9677 would contact the telephone number 414-595-5206. Affiant performed a law enforcement query for the telephone number 414-595-5206 which revealed the number belonged to Antwaun PUGH. Antwuan PUGH provided the number of 414-595-5206 to the Milwaukee County Sheriff's Office on December 8,

6

2014, as his personal contact number. Toll records revealed that the number listed for Christopher Agena, was contacted by the number listed for Kenyon PUGH. The number for Kenyon PUGH then contacted the number for Antwuan PUGH several times before Antwuan PUGH met with Christopher Agenta to make the firearms transaction.

17.     Affiant is aware that law enforcement recovered the .45 caliber Glock handgun, bearing serial number XEH452, previously mentioned from J.R. on September 16, 2015. J.R. was a convicted felon prior to this event, and pled guilty to being a Felon in Possession of a Firearm in the Eastern District of Wisconsin.

18.     On April 18, 2016, affiant interviewed Robert Warren regarding a Glock handgun, model 21, .45 caliber, bearing serial number TNY752. Mr. Warren indicated that he sold the firearm on "Armslist" on November 9, 2015. Mr. Warren produced a cell phone bill for his number 301-659-4212. Mr. Warren was able to show that the number he negotiated the firearm deal with was 414-233-9677 (Kenyon PUGH). Mr. Warren stated he met the individual at the Park and Ride in Johnsons Creek, WI. Mr. Warren stated the purchaser of the firearm was the passenger of a Yellow Monte Carlo, a black male, roughly 260-270 pounds with "shaggy" hair. Mr. Warren observed several photos and identified a MPD booking photo of Antwuan PUGH as the individual who possibly purchased the firearm. Mr. Warren was not certain due to differing skin tones but could recall the letter D as the middle intitial on the person who bought the firearms identification card. Mr. Warren stated he received around $400 to $450 dollars for the firearm. Mr. Warren stated he believed the vehicle to be an older model Chevrolet Monte Carlo.

7

19.     On December 1, 2015, law enforcement recovered the Glock handgun, model 21,

.45 caliber, bearing serial number TNY752, from Antwuan PUGH's residence located at 8142 N.

Granville Road, Milwaukee, WI, 53224, as detailed in Paragraph 11 of this affidavit.

20.     Affiant interviewed Derek Harmsen in regard to three (3) Glock handguns, model

23, .40 caliber, bearing serial numbers MHT876, PVL502, MHZ778. Mr. Harmsen indicated he

sold the firearms on "Armslist," on November 15, 2015 to Antwuan PUGH. Mr. Harmsen stated

that, before he sold the firearms to Antwuan PUGH, he observed Antwuan PUGH'S driver's

license, and the photograph on the license matched the individual identifying himself as

Antwuan PUGH. Mr. Harmsen indicated that he queried Antwuan PUGH in the Wisconsin

Circuit Court Access Program (CCAP) and the results revealed that Antwuan PUGH was not a

convicted felon in the state of Wisconsin. Mr. Harmsen stated that the person who he contacted

regarding the firearms transaction utilized the number 414-233-9677 (Kenyon PUGH). Mr.

Harmsen had Antwuan PUGH fill out three (3) bills of sale for the firearms. Antwuan PUGH

wrote the telephone number 414-233-9677 on each bill of sale. Mr. Harmsen received $1250.00

for the three (3) firearms.

21.     Affiant was able to obtain telephone toll records for the firearms transaction

between Derek Harmsen and Antwuan PUGH. Mr. Harmsen utilized the telephone number 262-

853-8025. Records reflect that the telephone number 414-233-9677 (Kenyon PUGH) sent and

exchanged text messages with Mr. Harmsen on November 13, 2015. The next day, November

14, 2015, the telephone number 414-233-9677 (Kenyon PUGH) called the number 414-793-2282

several times, and each call appears to have been answered. The telephone number 414-793-

8

2282 was provided by Antwuan PUGH to MPD on December 1, 2015, as his personal contact number when he was stopped and arrested that same day.

22.     The Glock handgun, model 23, .40 caliber, bearing serial number MHT876, was recovered during a traffic stop by MPD on March 1, 2016. Located inside the vehicle was a convicted felon and three other individuals inside the vehicle, all of whom have suspected ties to narcotics trafficking in the Milwaukee County area. The other two Glock handguns purchased by Antwuan PUGH on November 15, 2015 from Mr. Harmsen, have yet to be recovered by law enforcement.

23.     On August 12, 2016, affiant telephonically interviewed John Vetta regarding a SCCY Industries LLC handgun, model CPX-2, 9mm, bearing serial number 105111. Mr. Vetta stated he sold the firearm on "Armslist" to a person with the initial EMAIL address of KeonP86@Yahoo.com (it should be noted Kenyon Pugh was born in 1986). Mr. Vetta stated the two moved to telephone communication from the number 414-233-9677 (Kenyon PUGH). Mr. Vetta stated he sold the firearm on November 22, 2015. Mr. Vetta could not recall who bought the firearm; however, he did remember the license plate. Mr. Vetta explained the person arrived to the Cabellas in Richfield, WI, in a Yellow Chevrolet Monte Carlo bearing Wisconsin license plate 274-XET. This vehicle is registered to Chaniqua L. BELL. Affiant is aware that BELL is a possible longtime girlfriend of Kenyon PUGH, and has observed during surveillance her yellow Chevrolet Monte Carlo at the PUGH's residence on Granville Road several times. Mr. Vetta stated he negotiated the transaction with whom he believed to be a male, and a male and female arrived to conduct the transaction. Mr. Vetta stated the female handled the paperwork and the firearm, and the black male made some sort of comment that "he was a Glock guy."

9

24.     Mr. Vetta eventually located a bill of sale for the firearm and provided it to the affiant. The purchaser of the firearm was identified as Chaniqua L. BELL.

25.     The firearm sold from Mr. Vetta to BELL was recovered on April 28, 2016, by MPD. The firearm was recovered during the commission of an armed robbery commited by D.D. D.D. subsequently pled guilty to a Hobbs Act robbery, use of a firearm during and in relation to the robbery, and an attempted Hobbs Act robbery in August 2016 in the Eastern District of Wisconsin.

26.     On March 22, 2016, affiant interviewed Michael Doe regarding a Kahr Arms handgun, model CW-45, bearing serial number SG2977. Mr. Doe indicated he sold the firearm on "Armslist," an online firearms brokerage website, in September of 2014.

27.     On December 1, 2015, law enforcement recovered the aforementioned firearm box (box only) from Antwuan PUGH's residence located at 8142 N. Granville Road, Milwaukee, WI, 53224, as detailed in Paragraph 11 of this affidavit.

28.     Utilizing the National Integrated Ballistic Information Network (hereinafter reffered to as NIBIN), a software used to match shell casings from a crime scene to a particular firearm, MPD was able to match two separate crime scenes to the Kahr Arms handgun. The first incident occurred on February 11, 2015. In this incident, the victim was shot in the neck by the aforementioned firearm and later succumbed to his injuries. The second incident occurred on February 15, 2015. In this incident, an unknown actor discharged the aforementioned firearm within one hundred (100) yards of an occupied dwelling within the city of Milwaukee.

29.     MPD recovered the Kahr Arms handgun from A.K.D. on April 16, 2015, when he was arrested for carrying a concealed weapon. A.K.D. indicated he purchased the firearm from a

person named "Dooky" in Milwaukee around March of 2015. A.K.D. was not a convicted felon during the course of this recovery by MPD, however A.K.D. is now a convicted felon under state of Wisconsin for Escape-Criminal arrest, a Class H felony.

30.     On April 8, 2016, affiant interviewed Jonathan B. MILLER regarding a Glock GMBH handgun, model 22C, .40 caliber, bearing serial number GHU315. MILLER indicated he purchased the firearm in November of 2014. Affiant was able to aquire ATF multiple sale form M20140277848, which revealed MILLER purchased the firearm on November 3, 2014. MILLER indicated he sold the firearm on "Armslist" to an individual he knew to be K.S. on May 7, 2015. MILLER believed Kevin Sweepe to be an Asian American male.

31.     On December 1, 2015, law enforcement recovered the gun box for the Glock GMBH handgun, model 22C, .40 caliber, bearing serial number GHU315, from Antwuan PUGH's residence located at 8142 N. Granville Road, Milwaukee, WI, 53224, as detailed in Paragraph 11 of this affidavit.

32.     Utilizing NIBIN, MPD was able to match the casings from the Glock GMBH handgun, model 22C, .40 caliber, bearing serial number GHU315, to a homicide that occurred in Rockford, Illinois, on December 16, 2015. The victim was a seventeen-year old male.

33.     On April 9, 2016, the Glock GMBH handgun, model 22C, .40 caliber, bearing serial number GHU315, was recovered in the city of Milwaukee. Possessing the firearm was D.W. D.W. was a previous convicted felon under state of Wisconsin. D.W. subsequently pled guilty to being a Felon in Possession of a Firearm for this event.

34.     On February 22, 2016, affiant interviewed Shawn Black regarding a Armscor of the Philippines handgun, model M1911-A1, .45 caliber, bearing serial number RIA1686424. Mr.

11

Black indicated he sold the firearm on "Armslist," sometime in September of 2015. Mr. Black stated he saw the exact firearm for sale back on "Armslist" for a higher listed price in October of 2015. Mr. Black stated he believed it was the same firearm due to the unique white grips affixed to the firearm. Mr. Black could not provide a name for the person to whom he sold the firearm.

35.     On November 22, 2015, the aforementioned firearm was believed to be utilized in a shooting that occurred into a house located at 86XX N. 106th St, Milwaukee, WI. At the time of the shooting, witnesses viewed a black Lincoln town car speed away from the scene of the shooting. It should be known that Antwuan PUGH is known to operate a black Lincoln town car bearing state of Wisconsin license plate 922-XXN, as evidenced by the vehicle stop on December 1, 2015 and as detailed in Paragraph 9 of this Affidavit.

36.     On December 1, 2015, law enforcement recovered the Armscor of the Philippines handgun, model M1911-A5, .45 caliber, bearing serial number RIA1686424, in Antwuan PUGH's bedroom, as detailed in pagagraph 11 of this affidavit. This firearm NIBIN tested positive to the shell casings recovered from the scene of the shooting that occurred on November 22, 2015 on 106th Street.

**Antwuan PUGH's Post-Arrest Statement and Other Records**

37.     On December 1, 2015, during Antwuan PUGH's recorded mirandized statement, Antwuan PUGH stated that the firearms located in the house were in his bedroom and that both firearms in his bedroom were purchased by a girlfriend. Antwuan PUGH stated he bought three (3) or four (4) guns that year and had already sold them. Antwuan PUGH stated he sold a Glock firearm on the "street" and he did not know the person's name, Email, or phone number. Antwuan PUGH stated that he had the two Glock firearms from the cases in his bedroom, but he

12

sold those as well. Antwuan PUGH stated he has never bought a firearm at a gun store and only off of "Armslist" because it is cheaper.

38. On April 21, 2016, affiant received copies of reported wages from the Wisconsin Department of Workforce Development (hereinafter reffered to as DWD) for Antwuan and Kenyon PUGH. The DWD report outlines a person's reported earnings for any given particular year. In 2015, the PUGH brothers reported earning a combined $243.86. In November of 2015 alone, Antwuan PUGH spent a combined $1700 on four (4) Glock handguns from two different individuals. From December 2014 through Novemebr 2015, the PUGHs are suspected of purchasing eleven (11) firearms off of "Armslist," many of which have been recovered during the commission of crimes throughout the city of Milwaukee.

**Summary**

39. Affiant reasonably believes that the cell phone recovered from Antwuan PUGH on December 1, 2015 reasonably could be the cell phone utilized to conduct several firearms transactions based on telephone toll records, and historical information. Affiant believes, basedon upon such records and information, as detailed herein, that Kenyon PUGH, a previously convicted felon, was organizing several firearms transactions via "Armslist" and then having his brother, Antwuan PUGH, a non prohibited person, conduct the transaction with the seller of the firearm.

40. Affiant is aware that someone who purchases firearms on behalf of a prohibited person is called a "straw purchaser." The straw purchaser conducts the transaction to not be detected by law enforcement. The straw purchaser then distributes the firearm or firearms accordingly to other individuals. Affiant reasonably believes that Antwuan PUGH was acting as

13

a straw purchaser for his brother Kenyon PUGH. Affiant believes that the brothers utilized their cell phones to facilitate firearms transactions amongst themselves and evidence of firearms trafficking may likely be stored and recorded on Antwuan PUGH's cell phone referenced in Paragraph 7.

41.    Affiant is aware that firearms traffickers frequently possess cellular telephones. For example, a firearms trafficker may use one cellular phone to communitcate with potential sellers of firearms and indivduals wishing to purchase the firearms from the trafficker.  Affiant therefore believes that information contained within the cellular telephone listed in Paragraph 7 and on the face of this search warrant, including call detail records, records of incoming and outgoing calls and text messages, emails, notes, photos, as well as recorded voicemail messages, may provide evidence relating to firearms trafficking activity, possible contacts, source of suppliers, customers, and identify individuals of others with whom the individual is/was involved in the acquisition and disposition of firearms.

42.    Affiant is aware that persons who traffic in firearms frequently record images, both still and moving, of themselves in possession of firearms. Likewise, although counter intuitive, persons who are prohibited from possessing firearms inexplicably take or keep pictures of firearms they have in their possession, as well as photographs of themselves holding or displaying the firearms in their possession.

43.    Affiant is aware that individuals who possess and use marjijuana will often arrange marijuana transactions via their cell phones. Given that Antwuan PUGH was arrested with marijuana in the vehicle and that marijuana was recovered in his bedroom, it reasonable that

14

there could be text messages, voice calls, as well as photos of marijuana regarding the sale and purchase of marijuana.

44.     Device A is currently in storage at Bureau of Alcohol, Tobacco, Firearms and Explosives Milwaukee Field Office, located at 1000 N. Water Street, Suite 1400, Milwaukee, WI, 53202, on inventory under case number 778040-16-0047, item number 000007. In my training and experience, I know that the Device has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as it was when the Device first came into the possession of the Milwaukee Police Department.

## III.     TECHNICAL TERMS

45.     Based on my training and experience, I use the following technical terms to convey the following meanings:

   a.   Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

   b.   Digital camera:  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a variety of fixed and removable storage media to store their recorded images.

15

Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer

16

software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

46. Based on my training, experience, and research, I know that Device A has the capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA and all have the ability to access the internet. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the devices.

## IV. ELECTRONIC STORAGE AND FORENSIC ANALYSIS

47. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

48. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Devices were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

17

g. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

h. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

i. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

j. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

k. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

49. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of Device A consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the devices to human inspection in order to determine whether it is evidence described by the warrant.

50. *Manner of execution.* Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve

18

the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## V.    CONCLUSION

51.     Based on the above information, there is probable cause to believe that Antwuan D. PUGH is involved in (1) possessing firearms or ammunition as an unlawful user of or as an addict to any controlled substance, in violation of Title 18, United States Code, Section 922(g)(3); (2) selling or disposing of any firearm or ammunition to a known felon, in violation of Title 18, United States Code, Section 922(d)(1); and (3) dealing firearms without a license, in violation of Title 18 United States Code, Section 922(a)(1).   There is also probable cause to search Device A, which is more particularly described in Attachment A, and which is currently located at the ATF Milwaukee Field Office, Milwaukee, Wisconsin, for evidence of these crimes, as described in Attachment B.

## **ATTACHMENT A**

The property to be searched is:

a.  One white Samsung touchscreen cell phone, Serial # 354335/07/551193/3, Device

A.  Device A is currently located at the ATF Milwaukee Field Office located at

1000 N. Water Street, Suite 1400, Milwaukee, WI, 53202. Device A is currently

listed under ATF case number 778040-16-0047, item number 000007.

## ATTACHMENT B

1.      All records on Device A described in Attachment A that relate to violations of Title 18, United States Code, Sections 922(a)(1), 922(d)(1), and 922(g)(3) and involve Antwuan PUGH, including, but not limited to:

     a.  lists of customers and related identifying information;

     b.  types, amounts, and prices of firearms and drugs trafficked as well as dates, places, and amounts of specific transactions;

     c.  any information related to sources of firearms and drugs (including names, addresses, phone numbers, or any other identifying information);

     d.  any information recording Antwuan PUGH's schedule or travel;

     e.  all bank records, checks, credit card bills, account information, and other financial records;

     f.  Photographs and/or videos depicting Antwuan PUGH in possesson of weapons and/or narcotics;

     g.  Any evidence related to either the ownership, purchase, or possession of firearms; and

2.      Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

3.      As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.